UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| BETTY L. WOODARD,<br><br>      Plaintiff,<br>v.<br><br>JEFFERSON CAPITAL SYSTEMS, LLC,<br><br>      Defendant. | **COMPLAINT**<br><br>JURY TRIAL DEMANDED |

## INTRODUCTION

1. This is an action for damages, brought by a consumer against debt collectors for violating the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* and Michigan Occupational Code ("MOC"), M.C.L. § 339.901 *et seq.*

## JURISDICTION

2. Jurisdiction of this Court arises under 15 U.S.C. § 1692k(d) (FDCPA) and 28 U.S.C. § 1331. This Court has supplemental jurisdiction regarding plaintiff's state law claims under 28 U.S.C. § 1367. Venue in this judicial district is proper because the pertinent events took place here.

## PARTIES

3. Plaintiff, Betty Woodard, is an adult, natural person residing in Eaton County, Michigan. Ms. Woodard is a "consumer" and "person" as the terms are defined and used in the FDCPA, and she is a "consumer," "debtor" and "person" as the terms are defined and used in the MOC.

4. Defendant, Jefferson Capital Sysetms, LLC ("JCS"), is a foreign limited liability company, with its principal place of business at Five Concourse Parkway, Suite 400, Atlanta, GA

30328. The registered agent for JCS in Michigan is CSC – Lawyers Incorporating Service (Company), 601 Abbot Road, East Lansing, Michigan 48823. JCS is engaged in the business of purchasing and collecting defaulted and charged-off consumer debts. JCS uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. JCS regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. JCS uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. JCS is a "debt collector" as the term is defined and used in the FDCPA. JCS is a "collection agency" as the term is defined and used in the MOC.

## FACTS

5. Sometime in 1996, Plaintiff incurred a financial obligation opened a Finger Hut account, which she used to purchase goods or services for personal, family or household purposes. Any resulting obligation of Ms. Woodard to pay money was a "debt" as the term is defined and used in the MOC.

6. Plaintiff defaulted on the account in sometime in 2002.

7. Upon information and belief, Finger Hut accounts are issued by WebBank, an FDIC-insured, state-chartered industrial bank headquartered in Salt Lake City, Utah, and organized under the laws of the state of Utah in 1997.

8. Upon information and belief, WebBank declared the account in default and then charged off and later sold the account.

9. Ms. Woodard disputes and refuses to pay the balance allegedly owed on her Fingerhut account, because it is well beyond the applicable Michigan six-year statute of limitation.

10. JCS allegedly purchased the charged-off account and related alleged debt either directly from WebBank or from some other purchaser of said charged-off account.

11. JCS placed the account with the law firm of Rausch, Sturm, Israel, Enerson & Hornik, LLC ("RSIEH"), to collect the alleged debt from Ms. Woodard.

12. On or about January 6, 2015, RSIEH on behalf of JCS filed a debt collection lawsuit ("State Court Lawsuit") against Ms. Woodard in the 56-A Judicial District Court for the State of Michigan, Case No. 15-0074-GC. The complaint was dated December 9, 2014, and was signed by RSIEH attorney Danid J. Canine. The complaint was filed in connection with efforts by RSIEH and JCS to collect the disputed debt from Ms. Woodard. A copy of the complaint filed in the State Court Lawsuit is attached as Exhibit A.

13. Ms. Woodard was personally served with Summons and Complaint in the State Court Lawsuit.

14. Ms. Woodard was required to retain an attorney (hereafter "Defense Counsel") to file a response to the State Court Lawsuit, causing Ms. Woodard to suffer actual damages in excess of $2,900, through and including dismissal of the State Court Lawsuit.

15. JCS's complaint sought judgment in the amount of $848.88.

16. Included in the State Court Lawsuit was only a purported an Affidavit of Account, dated November 7, 2014, which made no reference to an original creditor, account assignor or an account number and was based solely on "information and belief." In short, there was no admissible documentary evidence attached to the State Court Lawsuit to support that JCS was the proper plaintiff to bring the suit or that it had a claim against Ms. Woodard.

17. The Affidavit of Account was impermissible hearsay and inadmissible documentary evidence.

18. The Complaint referenced "Plaintiff's assignor" but with no further information, such as a name of the assignor.

19. Only upon extensive research was Ms. Woodard able to glean a notion of what account this may have been and that she had an absolute defense thereto.

20. Ms. Woodard, through retained counsel, defended the lawsuit, raising the primary defense that the action was barred by the Michigan statute of limitations.

21. On March 2, 2015, JCS, through its agent RSIEH, requested that the parties attend by telephone the pretrial scheduled for April 6, 2015, at 8:30 a.m., evidence by letter to the Court with a copy to Defense Counsel. (Exhibit B)

22. Defense Counsel accordingly confirmed and scheduled the Pretrial as a Phone Pretrial on her calendar.

23. On April 6, 2015, Defense Counsel contacted the state court by telephone to participate in the telephonic pretrial conference but was unable to reach the judge's chambers but left a message for the judge's assistant.

24. At 9:42 a.m. same date, having been unable to reach the state court for the telephonic hearing, Defense Counsel contacted the office of David Canine regarding the hearing and left a message for Mr. Canine regarding the telephonic hearing that was scheduled.

25. At 10:22 a.m. same date, Mr. Canine returned Defense Counsel's call and apologized that he had inadvertently sent local appearance counsel, who conducted the hearing in the absence of Defense Counsel, and requested and received default judgment for JCS.

26. Mr. Canine, on behalf of JCS, agreed to enter into a stipulation to set aside the default judgment and would draft same and forward to Defense Counsel for signature.

27. At 11:33 a.m. same date, Defense Counsel received a return call from the judge's chambers, indicating that default had been entered, due to failure to appear, and that the court did not have the pretrial scheduled for telephonic hearing, despite the written request of Mr. Canine.

4

28. A Civil Judgment was entered against Ms. Woodard and in favor of JCS on April 6, 2015, in the amount of $968.88 (Exhibit C).

29. After four days' wait, Defense Counsel inquired of Mr. Canine as to the status of the stipulation he had promised and was told that Mr. Canine would forward a draft the following week, April 13, 2015.

30. However, on April 16, 2015, Defense Counsel received a call from Mr. Canine indicating that he was too busy to draft a stipulation and inviting Defense Counsel to do so.

31. Defense Counsel drafted and forwarded a stipulation to set aside the default entry and a proposed order to Mr. Canine, who returned permission to sign.

32. On May 14, 2015, an Order Setting Aside Default Judgment was entered by the 56-A District Court Judge (Exhibit D), and a new pretrial date was scheduled for June 22, 2015. (Exhibit E).

33. On June 22, 2015, Defense Counsel appeared for the pretrial conference, and no one appeared on behalf of JCS, so the 56-A District Court entered a Dismissal against JCS without prejudice (Exhibit F).

34. WebBank's card agreement designates Utah as the governing law, "without regard to its choice of law provisions," and Utah statute of limitation for open end credit is four (4) years.

35. Michigan statute of limitation for breach of contract is six (6) years.

36. WebBank's Fingerhut credit account is solely for the purchase of Fingerhut goods and services and, accordingly, the Uniform Commercial Code limitation period of four (4) years applies to the enforcement of such debt.

37. Upon information and belief, JCS purchased this debt in June 2011, well after any of the stated statutes of limitation had run.

38. JCS has been reporting the Fingerhut account as "opened June 2011" and last updated in August 2011.

39. JCS has reported the Fingerhut account balance as $893 due on both Experian and Equifax.

40. The above-detailed conduct by JCS and its agent, RSIEH, for filing the State Court Lawsuit past the expiration of any applicable statute of limitations was a violation of numerous provisions of the FDCPC and MOC.

41. JCS and RSIEH's filing of the State Court Lawsuit, which they were not legally entitled to file is in and of itself an abusive debt collection practice.

42. JCS's claim was based on a Cardmember agreement that was controlled by Utah law and the Uniform Commercial Code, since the complaint in the State Court Lawsuit stated in Paragraph 3, "Plaintiff's assignor, issued the subject credit account and extended credit to Defendant9s) in accordance with the account member agreement."

43. JCS knew or should have known that Utah law has a four-year statute of limitation on credit card accounts.

44. JCS knew or should have known that the claim accrued more than four years prior to the action being filed and was stale.

45. JCS did not maintain procedures reasonably adapted to avoid violating the FDCPA and MOC.

46. If JCS had maintained procedures reasonably adapted to avoid violating the FDCPA and MOC, then JCS failed to follow those procedures.

47. The acts and omissions of JCS's agent, RSIEH, and its employees done in connection with efforts to collect the alleged debt from Ms. Woodard were done intentionally and willfully.

48. RSIEH and its employees, as the agent of JCS, intentionally and willfully violated the FDCPA and MOC.

49. The acts and omissions of JCS and its employees and agents done in connection with efforts to collect the alleged debt from Ms. Woodard were done intentionally and willfully.

50. JCS and its employees and agents intentionally and willfully violated the FDCPA and MOC.

51. JCS, to increase its business and profits, knowingly chose to use debt collection practices that violate the FDCPA and Michigan law, to the competitive disadvantage of those debt collectors who choose to abide by the law and refrain from using unlawful debt collection practices.

52. JCS, directly and indirectly, attempted to collect the alleged debt from Ms. Woodard.

53. JCS is a debt collector. JCS hired RSIEH, another debt collector, to collect the alleged debt from Ms. Woodard.

54. A debt collector that hires another debt collector to collect a debt is liable for the acts and omissions of the debt collector it hires to collect a debt.

55. JCS is liable for the unlawful acts and omissions committed by RSIEH in connection with the efforts by RSIEH and JCS to collect the alleged debt from Ms. Woodard.

56. As an actual and proximate result of the acts and omissions of JCS and RSIEH and their employees, Plaintiff has suffered actual damages and injury, including but not limited to,

7

monetary loss and emotional stress for which she should be compensated in an amount to be established by a jury and at trial.

## CAUSES OF ACTION

### COUNT I. FAIR DEBT COLLECTION PRACTICES ACT

57. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

58. Defendants violated the FDCPA. Defendant's violation of the FDCPA include, but are not necessarily limited to, the following:

   a. Defendants violated 15 U.S.C. § 1692e(2) by making false representations of the character, amount or legal status of a debt; and

   b. Defendants violated 15 U.S.C. § 1692f by using unfair and unconscionable means to collect or attempt to collect a debt from Ms. Woodard.

Wherefore, Plaintiff seeks judgment against Defendant for:

   a. Actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

   b. Statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A);

   c. Costs and reasonable attorney fees pursuant to 15 U.S.C. § 1692k(a)(3); and

   d. Such further relief as the court deems just and proper.

### COUNT II. MICHIGAN OCCUPATIONAL CODE

59. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

60. Defendants violated the MOC. Defendant's violations of the MOC include, but are not necessarily limited to, the following:

  a. Defendants violated M.C.L. § 339.915(a) by communicating with a debtor in a misleading or deceptive manner;

  b. Defendants violated M.C.L. § 339.915(e) by making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt;

  c. Defendants violated M.C.L. § 339.915(f) by misrepresenting in a communication with a debtor the legal rights of a creditor or debtor; and

  d. Defendants violated M.C.L. § 339.915(n) by using a harassing, oppressive, or abuse method to collect a debt; and

  e. Defendants violated M.C.L. § 339.915(q) by failing to implement a procedure designed to prevent a violation by an employee.

Wherefore, Plaintiff seeks judgment against Defendants for:

  e. Actual damages pursuant to M.C.L. § 339.916(2);

  f. Treble the actual damages pursuant to M.C.L. § 339.916(2);

  g. Statutory damages pursuant to M.C.L. § 339.916(2);

  h. Costs and reasonable attorney fees pursuant to M.C.L. § 339.916(2).

## **DEMAND FOR TRIAL BY JURY**

Plaintiff is entitled to and hereby respectfully demands a trial by jury on all issues so triable.

Dated:  December 29, 2015    /s/ Kristen L. Krol
    Kristen L. Krol (P55103)
    Law Office of Kristen L. Krol, P.L.C.
    Attorney for Plaintiff
    4710 W. Saginaw Highway, Suite C
    Lansing, Michigan 48917-2654
    517-321-6804 ♦ debtrlc@drlc.com